Peck, Judge.
The whole case turns upon this question: was the original simple contract debt extinguished hy the acts done by Nichol and Thompson,?
If the note given by Nichol to Fletcher, and endorsed by Fletcher to Thompson,"Vas done understanding^ with a yiew to satisfaction of the debt, then there was an ex-tinguishment, and the facts could be shewn as an accord and satisfaction. If it was intended merely to bind Fletcher, collaterally for the debt, it was no extinguishment. In argument for Thompson, it is made the test on this point by enquiring if assumpsit still remain the action tobe brought for the money. On the other side it is said *153 tliat because debt, by the act of assembly might be brought by the endorsee against the maker, that therefore there must, inlaw, have been an extinguishment. What was the intention of the parties, and how has the question of intention been submitted to the jury, for prima fa-cie payment may be rebutted. Chitty on contracts 290.
The court charged that the ndte given by Nichol to Fletcher, and endorsed to Thompson, was no extinguishment of the debt, even the note under seal, and that the party was not estopped to resort to the original contract.
Was the leaving it to the jury on all the circumstances, for them to determine whether or no it was received by Thompson, so as to operate an extinguishment.
It must depend upon the mind of the parties at the time of the transaction. Though from the thing done, the law often infers intention and applies a rule; it cannot he a legitimate objection to the charge of the court, to apply legal consequences flowing from certain facts; and this materially throws us back to the proposition — what was the legal effect of this note being executed to Fletcher and assigned to Thompson. The legal effect results from the facts; let us examine some of these facts. Why, it may he asked, did Thompson, from time to time, appeal to Fletcher? The answer is, that Nichol was absent, and Thompson was instructed to apply to Fletcher. It seems to be admitted that Fletcher probably once had the funds of Nichol in his hands for the satisfaction of this debt, but had used them. Suppose Thompson knew this, and being willing to receive his money out of means which had been left after Fletcher had become embarrassed, as is shewn by the assignment of Hall’s note, why should it be urged against Thompson, that because he had done something calculated to benefit Nichol, that Nichol should he protected entirely from the demand. This would be turning acts done by a creditor with the best intention toward a debtor, to an iniquitous purpose. But the fact is not so: Fletcher, in his deposition, is plain on this point, be says, when he proposed having the note renewed, not being able to pay it, Thompson answered *154 that he did not wish to have his friend Nichol protested, provided he could have him bound again; and it is plain why Fletcher wished to save Nichol from a protest; Nichol had put $3000 in the hands of Fletcher, and had given his bill payable at Orleans for $12,000 more. For these advances Fletcher was to pay sundry debts for Nichol. But Fletcher never told Thompson that he was bound to pay this money; on the contrary he was told that Nichol had failed to forward the money from Orleans to pay it.
Collecting what was the intention from all the facts before us, where is the ground to infer that Thompson had ever abandoned his right to resort to Nichol on the original contract, in case the money was not paid by Fletcher. If no such conclusion can fairly be drawn, the justice and equity of the case lies with Thompson. Why urge, that because Nichol has been looser in a round of dealing and accommodation between Fletcher and himself, with which Thompson had nothing to do, that Thompson should be made the sufferer.
The whole transaction plainly shews, that so far as Thompson was concerned, all the other persons, Fletcher and Hall, were considered but as collateral to the transaction, and the note made with that view. If collateral to the transaction the law fixes the liability- 6 T. Rep. 176, Leo. 110, Hooper’s case. 1 Chi tty’s pleading 93, where the authorities are brought together.
Catron, Judge.
An unsealed promise to pay docs not extinguish or merge a parol contract to pay a previous-debt, because they are of equal grade in the scale of evidence, subject to be defeated by countervailing proof, generally the consideration must be proven, upon which the written instrument was given, the only exception being in case of negotiable notes and bills. The same rule applies to bonds. Cro. E. 716, 727 ; 6 Co. 45, Higgin’s case; 3 Ba. Áb. 107.
A bond does merge the unwritten contrae!, because it is of higher dignity in the scale of evidence, admits of no *155 proof in opposition to the facts covenanted, estops the co-venantor from denying the consideration — 3 Co. Litt. 430, Thos. Ed. Cook’s Rep. 47.
Being conclusive upon the obligor, thelawholdsit equally so upon the obligee, by the rule, “that it is the best evidence of the contract, which on his part cannot be explained, added to, or diminished by parol proof.” Therefore, no other evidence can be heard.
Hence lawyers and judges say the debt is extinguished, and the parol contract merged in the bond; not but what the debt-exists, and the parol contract also, in point of fact, but because the law holds that the parties have fixed by covenant the terms of the agreement, which neither shall be permitted to disprove by inferior evidence. These are principles equally familiar to the student and Judge, and if resorted to in the present instance, would have saved the bench and bar much useless examination.
Let us apply this doctrine to the facts presented:— Nichol agrees to pay Thompson $3300 for property. Fletcher agrees to pay N. f3300 by bond, for what consideration we cannot know, because by the rules of law we are precluded from enquiring. We can only judge of its meaning from its face. Thompson was a. stranger to it: — Then Fletcher endorses the bond to Thompson as security for Nichol’s debt, with Fletcher’s endorsement in addition.
The endorsement was the collateral promise of Fletcher for Nichol’s debt, and had it been sealed was no merger, (2 Leo. 110, 5 T. R. 176,) to which Thompson was no party, in law; and how a bond between Fletcher and Nichol,'for any thing we dare know, grounded on a different consideration, can estop Thompson to prove his original contract, cannot be perceived. In law and in fact, no contract did ever take place in reference to this matter, directly between Thompson and Nichol, save the original agreement.
The possession of Hall’s note could not merge the evidence of the original contract. This is not the ground upon which this class of cases proceeded. It is upon the *156 ground that the note or hill extinguishes the debt — either that the note or hill is taken in payment absolutely, hy express agreement, or that it is paid — neither of which being proven in the present instance, this was n.o ground of defence, Chitty on Con. 290, 3 Ba. Ab. extinguishment D.
The assignment purporting to he that of Nichol, was, through a very honest mistake, endorsed without power to make it by Mr. Fletcher — was merely void, and passed no title to Thompson, in Hall’s note, and left the ori - ginal transaction as it found it. 1 Chit. Plead. 96 — 6 T. R. 136 — 6 E. 341 — 1 E. 432 — 1 Pet. Rep. 43 — 7 T. R. 241 — 1 E. 58.
Whyte, Judge, concurred.